**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **LARRY JENKINS,** | ) |
| **Plaintiff,** | ) Case No. CV 08-03087 AJW |
| v. | ) |
| | ) **MEMORANDUM OF DECISION** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| **Defendant.** | ) |

Plaintiff filed this action for judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a February 2003 hearing decision, an Administrative Law Judge ("ALJ") denied plaintiff's benefits application on the ground that he retained the residual functional capacity ("RFC") to perform medium work and was not precluded from performing his past relevant work. [Administrative Record ("AR") 123-127]. The Appeals Council granted plaintiff's request for review, vacated the February 2003 ALJ decision, and remanded the case for another hearing. [See JS 2; AR 135-

1  137].

2  Following a supplemental hearing, a second ALJ issued a written decision denying benefits in July
3  2006. [AR 21-26]. The second ALJ found that plaintiff retained the RFC to perform light work with the
4  option of sitting or standing at will, and that plaintiff's RFC did not prevent him from performing work
5  available in significant numbers in the national economy. Accordingly, the second ALJ found plaintiff
6  "not disabled" at step five of the sequential evaluation at any time through March 31, 2006, plaintiff's date
7  last insured. [AR 21-26].

8  On March 14, 2008, the Appeals Council granted plaintiff's request for review of the second ALJ's
9  July 2006 decision, and issued a new decision that was partly favorable to plaintiff. [AR 11-14]. The
10 Appeals Council adopted the findings made by the second ALJ at steps one through four of the sequential
11 evaluation procedure. The Appeals Council also adopted the second ALJ's finding at step five and his
12 conclusion that plaintiff was not disabled, but only with respect to the period ending on March 30, 2006,
13 one day before expiration of plaintiff's insured status. [AR 11-12].

14 The Appeal Council did not adopt the second ALJ's finding or conclusions at step five concerning
15 the period beginning on March 31, 2006, the date plaintiff's insured status expired. [JS 3; AR 11-14].
16 The Appeals Council reasoned that plaintiff was within 6 months of attaining age 55 on that date, and
17 therefore that the question of his disability fell within the Commissioner's "borderline age policy." See
18 20 C.F.R. § 404.1563(b)("We will not apply the age categories mechanically in a borderline situation. If
19 you are within a few days to a few months of reaching an older age category, and using the older age
20 category would result in a determination or decision that you are disabled, we will consider whether to
21 use the older age category after evaluating the overall impact of all the factors of your case."). The
22 Appeals Council concluded that the "very significant functional adversities" represented by plaintiff's
23 need to sit or stand at will created a "borderline age situation" warranting treating plaintiff as if he had
24 attained the age of 55 years as of March 31, 2006. Applying Rule 202.06 of the Medical-Vocational
25 Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the Appeals Council concluded that plaintiff was
26 disabled beginning on March 31, 2006, his date last insured. [JS 3; AR 11-14].

27 **Standard of Review**

28

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the [Commissioner's] decision, the [Commissioner's] conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Scope of judicial review**

Judicial review is limited to the Commissioner's "final decision." 42 U.S.C. § 405(g). The Appeals Council's decision, rather than the ALJ's decision, is the Commissioner's final decision in this case. See 20 C.F.R. §§ 404.955, 404.979, 404.981; Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).When the Appeals Council grants review, it "may affirm, modify or reverse" the ALJ's hearing decision. 20 C.F.R. § 404.979; Taylor, 765 F.2d at 875.

The Appeals Council adopted the findings and conclusions in the second ALJ's July 2006 decision at steps one through five of the sequential evaluation with respect to the period before March 31, 2006. The Appeals Council explained that it "found that the medical evidence supported the Administrative Law Judge's finding with respect to the claimant's credibility and [RFC], and that the claimant was not disabled through March 30, 2006." [AR 12]. Aside from that statement, the Appeals Council did not discuss or evaluate Dr. Sobol's reports or any other medical evidence. Therefore, the second ALJ's July 2006 decision is treated as the decision of the Appeals Council concerning the evaluation of the medical evidence and the credibility of plaintiff's subjective testimony.

**Treating orthopedist's opinion**

3

Plaintiff contends that the second ALJ erred in rejecting the opinions of his treating orthopedist, Dr. Philip Sobol. [See JS 4-12]. More specifically, plaintiff argues that Dr. Sobol's opinion that plaintiff was "temporarily totally disabled" ("TTD") was uncontroverted with respect to the period from plaintiff's alleged onset date in January 2001 until at least November 2003, and that the second ALJ erroneously rejected that opinion on the ground that it was contradicted by the opinions of other treating physicians. [AR 24]. Plaintiff also contends that the second ALJ erred in rejecting the functional restrictions described by Dr. Sobol in his May 2004 "permanent and stationary" report. [See AR 24, 1043-1052]. Plaintiff argues that even if Dr. Sobol's opinion were not entitled to controlling weight, the second ALJ erred in failing to give those opinions the "very heavy weight" they merited. [JS 6].

Workers' compensation progress reports from Dr. Sobol indicate that he began treating plaintiff in February 2001, shortly after plaintiff's alleged onset date, for injuries to his left hand and right foot sustained in earlier work-related accidents. [See AR 328-337, 390-444, 739-768, 1039-1108]. In an October 2003 report, Dr. Sobol summarized plaintiff's treatment history. Dr. Sobol unsuccessfully attempted to debride and close a laceration wound that plaintiff sustained in January 2001, resulting in injury to the left ulnar sensory nerve, which affected plaintiff's ability to use his left hand. [See AR 740]. A plastic surgeon, Dr. Olsen, completed additional surgery on plaintiff's left hand in April 2001. [AR 338-340, 740, 1047]. Post-operatively, plaintiff developed left trigger thumb, prompting Dr. Sobol to seek authorization for corrective surgery. [AR 740, 749].

Plaintiff underwent surgery in December 2002 with Dr. Carol Frey, an orthopedic foot specialist, to repair ligament damage resulting from a crush injury to his right ankle and foot. [AR 614-738, 740, 753]. After surgery, plaintiff continued to have subjective pain complaints, resulting in a referral to Dr. John Bohm, a pain management specialist. [AR 740, 868-869, 1035-1038]. Between June 2003 and January 2005, plaintiff received extensive pain treatment, including prescription medication, a series of lumbar spine epidural steroid injections, nerve blocks, and ablation, which provided "significant relief." [AR 477-613, 753, 874-1034, 1048]. As of October 2003, plaintiff was awaiting a consultation with Dr. Frey to determine if additional surgery was needed on his right foot. [AR 753].

4

Dr. Sobol opined in October 2003 that plaintiff was TTD[1] continuously from February 5, 2001 until at least November 13, 2003, and that "[s]ignificant permanent disability is expected." [AR 753]. Dr. Sobol said that plaintiff's TTD resulted from "residual symptoms in the right foot/ankle and left hand . . . ." [AR 753]. He opined that during the course of an 8-hour work day, plaintiff could sit continuously for 2 hours, stand continuously for 10 minutes, stand and walk for less than 2 hours total, and sit for about 2 hours total. [AR 751]. He said that plaintiff needed to walk around every five minutes or so for a period of about one minute, shift between sitting, standing, and walking at will, take short unscheduled breaks during the work day, and use an assistive device for occasional standing or walking. [AR 751-752]. Dr. Sobol further opined that plaintiff could lift no more than ten pounds occasionally and could not use his left upper extremity for grasping, turning, twisting, fine manipulation, or reaching in any direction. [AR 752]. Dr. Sobol estimated that plaintiff would be absent from work more than three times a month. [AR 753].

Dr. Sobol performed left thumb trigger release surgery on December 16, 2003. [AR 1047-1048]. In February 2004 and March 2004, he completed workers' compensation reports indicating that plaintiff should continue to remain off work. [AR 1054-1055]. In April 2004, Dr. Sobol issued a "permanent and stationary" report.[2] [See AR 1043-1053]. Dr. Sobol opined that plaintiff's left hand and right foot impairments precluded heavy lifting, repetitive or forceful gripping, grasping, squeezing, holding,

---

[1] In California workers' compensation parlance, a "period of temporary total disability" means "that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention." W. M. Lyles Co. v. Workmen's Comp. Appeals Bd., 3 Cal.App.3d 132, 136 (1969)); see Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996)(stating that an individual is "temporarily totally disabled" under California workers' compensation law if that individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury," and that a claimant who applies for temporary total disability benefits "necessarily assert[s] that she [is] unable to work") (internal quotation marks and citations omitted).

[2] A disability is considered "permanent and stationary" for California workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Compensation Appeals Bd., 89 Cal.App.4th 1284, 1290 n.7 (2001) (quoting Cal.Code Regs., tit. 8, § 10152).

pinching, pushing, pulling, repetitive finger dexterity and fine manipulation, repetitive flexion and extension of the wrist, kneeling, crouching, crawling, pivoting, running, jumping, climbing, walking on uneven ground, prolonged weight-bearing, or working in extreme hot or cold environments. [AR 1049].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)(citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157; SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The second ALJ found that plaintiff retained the RFC to

> lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; and sit, stand and/or walk up to 6 hours each out of an 8-hour workday, but he needs a sit/stand option at will and thus cannot perform prolonged sitting or standing/walking.

[AR 24]. The second ALJ determined that plaintiff's RFC prevented him from performing his past relevant work, but did not preclude him from performing alternative work. [AR 24]. The second ALJ said

that he rejected Dr. Sobol's October 2003 functional assessment and May 2004 permanent and stationary rating because those opinions "have objective support," justified an RFC at the light exertional level, and were consistent with "some of the other physician's opinions, such as Dr. Keith S. Feder's September 8, 2003 finding that the claimant was temporarily totally disabled." [AR 24]. The second ALJ also determined that Dr. Sobol's opinions were inconsistent with "the findings of other treating physicians," the objective medical evidence, and the June 2004 opinion of the agreed medical examiner, Dr. Sanders. [AR 24].

The second ALJ's decision discusses the evidence from December 9, 2003 onward that the second ALJ used to reject Dr. Sobol's opinion and to assess plaintiff's RFC. [See AR 24-25]. The voluminous record included plaintiff's medical records from 2001 and 2002. The second ALJ did not specifically discuss that evidence in his July 2006 decision, however. Instead, he

> "readopt[ed] the evaluation of the objective evidence from 2002 and earlier in the now-vacated February 20, 2003 [decision]. On remand, the Administrative Law Judge finds that the new evidence does not warrant a reevaluation of the evidence that was evaluated in the February 20, 2003 decision, as the new evidence does not justify a finding of disability on remand or the imposition of functional limitations beyond those cited above.

[AR 26].

The first ALJ's February 2003 decision discussed 2001 and 2002 medical reports from Dr. Sobol and other treating and examining physicians, along with objective medical evidence from that period. [AR 125]. The first ALJ found plaintiff not disabled at step four because he could perform medium work. The February 2003 ALJ decision, of course, was vacated by the Appeals Council. [See AR 135-137].

In order to ascertain the basis for the Appeals Council's decision, then, the court must look to not one, but two, prior ALJ decisions, along with an administrative record comprising more than 1100 pages. This unnecessarily complicates the task of conducting an informed review of the Appeals Council's decision. See Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009)(stating that "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision")(alteration and ellipsis omitted)(citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and quoting Chiappa v. Sec'y of Dep't of Health, Educ. & Welfare, 497 F.Supp. 356, 358 (S.D.N.Y.1980)

7

("The failure of ALJs to make specific findings in disability cases is among the principal causes of the delay and uncertainty in this area of the law.")(alteration and ellipsis omitted)); Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir. 1986)(explaining that "the reasons for the ALJ's conclusions must be stated in a manner sufficient to permit an informed review," and that "similar requirements necessarily apply in reviewing the Appeals Council's decision").

What is even more troubling is that the second ALJ, whose July 2006 decision the Appeals Council adopted for the period ending on March 30, 2006, adopted the evaluation of the evidence in the first ALJ's February 2003 decision, which was squarely rejected as inadequate and vacated by the Appeals Council. In its order vacating that decision, the Appeals Council wrote, in part:

> The decision provides no rationale for the residual functional capacity and does not accord weight to the opinions of record. The claimant's treating physician, Philip A. Sobol, found the claimant to be temporarily totally disabled in February 2001, and continued to indicate such disability through at least November 2002. While the decision notes that Dr. Sobol initially found plaintiff to be temporarily totally disabled at the beginning of treatment, it does not consider the doctor's continuing statements regarding the claimant's disability. Therefore, further evaluation is warranted.
>
> . . . .
>
> The claimant submitted additional evidence in connection with his request for review indicating that he underwent surgery in December 2002 for a torn Achilles tendon with impingement in the posterior aspect of the calcaneus and posterior tibial tendon tendinosis. The surgery was performed by Carol Frey, M.D. In a status report dated December 17, 2002, Dr. Frey indicated that the claimant was temporarily totally disabled. This evidence is new and material and must be considered on remand.

[AR 135-136]. On remand, the ALJ was directed, among other things, to give further consideration to the treating source opinions, obtaining additional evidence or clarification from them, if needed, and to "explain the weight given to such opinion evidence." [AR 138].

By adopting the first ALJ's evaluation of the evidence from 2001 and 2002, the second ALJ and the Appeals Council perpetuated the defects that led the Appeals Council to vacate the first ALJ's

February 2003 decision, including the first ALJ's flawed evaluation of Dr. Sobol's treating source opinions from that period, which plaintiff contends were erroneously rejected.[3]

Furthermore, the record as a whole substantiates plaintiff's assertion that the second ALJ improperly rejected Dr. Sobol's TTD opinions.[4] The second ALJ forthrightly acknowledged that Dr. Sobol's were consistent with the opinions of "some of the other" physicians' opinions, in particular that of Dr. Feder, another treating orthopedist. [AR 24]. Dr. Feder opined in September 2003 that plaintiff's right foot injury warranted "continu[ing]" his TTD status. [AR 24, 829]. Dr. Feder's positive examination findings included fair strength, good to fair range of motion, poor stability, ability to walk only 10 to 15 feet, mild global swelling, multiple site tenderness, Achilles tendon tenderness, and pain and weakness on resistive manual muscle strength testing. [AR 826-828]. An EMG nerve conduction study was "consistent with peripheral neuropathy affected by lateral lower extremities (probably consistent with diabetes) and distal right peroneal motor nerve injury." [AR 828].

That, however, is not the only consistent treating opinion in the record. Between February 2002

---

[3] The second ALJ attempted to justify his adoption of the first ALJ's evaluation of the evidence in the "now-vacated" decision by observing that "the new evidence does not warrant a reevaluation of the evidence that was evaluated in the February 20, 2003 decision, as the new evidence does not justify a finding of disability on remand or the imposition of functional limitations beyond those cited above." [AR 25-26]. The "new evidence" discussed by the second ALJ concerned the period beginning in December 2002, when plaintiff underwent surgery with Dr. Frey. Nothing in the second ALJ's decision suggests that he obtained "new evidence" concerning plaintiff's condition in 2001 and 2002, before plaintiff underwent surgery with Dr. Frey. Evidence of plaintiff's condition during and after his December 2002 surgery does not dispose of the question of the severity of his impairments before that date. That is all the more true where, as here, plaintiff alleges disability due to the effects of traumatic hand and foot injuries whose intensity and limiting effects might be expected to change over time.

[4] Plaintiff contends that plaintiff should reasonably be considered TTD "until at least a reasonable amount of recovery time after his December 2003 surgery." [JS 5 n.2]. In October 2003, Dr. Sobol opined that plaintiff was TTD until "at least" November 13, 2003 because he was awaiting additional surgery. [AR 753]. Dr. Sobol performed a left trigger thumb release on December 16, 2003. [AR 1044, 1048]. He issued progress reports in February and March 2004 stating that plaintiff had to remain off work. [AR 1054-1055]. Dr. Sobol then issued a permanent and stationary report in April 2004. [AR 1042-1053]. Thus, Dr. Sobol continued plaintiff's TTD status through the end of March 2004.

9

and January 2004, *both* of plaintiff's treating orthopedists besides Dr. Sobol, Dr. Frey and Dr. Feder, either opined that plaintiff was TTD or expressly deferred to Dr. Sobol's opinion concerning plaintiff's disability status. [AR 813-829, 835, 844, 847]. In addition, Dr. Sanders, an orthopedist who served as the agreed medical examiner, opined that plaintiff was TTD in September 2002 and again in August 2003.[5] [See AR 374-385, 742]. Dr. Maria Leynes, an internist who treated plaintiff between 2001 and 2003, deferred to Dr. Sobol's opinion regarding plaintiff's disability status. [AR 446, 465].

The second ALJ nonetheless concluded that Dr. Sobol's opinions were "contradicted by the *findings* of other treating physicians." [AR 24]. That reasoning fails to account for the principle that the ALJ must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments." Lester, 81 F.3d at 832-833 (explaining that "[t]he treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment"). The second ALJ identified what he deemed to be "contradictory" findings made by Dr. Frey, who—as the ALJ acknowledged—either agreed with Dr. Sobol that plaintiff was TTD, or simply deferred that determination to Dr. Sobol. It is axiomatic that as a treating physician and a specialist in orthopedics, Dr. Frey's interpretation of her objective and clinical findings trumps a contrary interpretation based on nothing more than the ALJ's conflicting view of their significance. See Gonzalez Perez v. Sec'y of Health & Human Srvs., 775 F.2d 12, 14 (1st Cir. 1985)(stating that the ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician").

The second ALJ erred by failing to articulate specific, convincing reasons based on substantial

---

[5] The second ALJ noted that Dr. Sanders reported that plaintiff "takes off his ankle brace to drive." The second ALJ characterized this as "an indication that [plaintiff] can perform light exertional-level work." [AR 26]. Dr. Sanders' observation does not support such an inference, particularly because Dr. Sanders added that plaintiff complained that he "does limp a lot and continues to have pain in the ankle." [AR 771]. The second ALJ also said that Dr. Sanders indicated that plaintiff's "left thumb had recovered." [AR 26]. What Dr. Sanders actually said is that plaintiff reported that he no longer had any problems with triggering in his left thumb, but he still had some aches and pains, and some discomfort and weakness with gripping and grasping, but not much. [AR 771].

evidence in the record for rejecting Dr. Sobol's TTD opinions.

The second ALJ's reasons for rejecting Dr. Sobol's opinion as reflected in that doctor's April 2004 permanent and stationary report are also legally insufficient. Dr. Sobol opined that plaintiff was precluded from heavy lifting, repetitive or forceful gripping, grasping, squeezing, holding, pinching, pushing, pulling, repetitive finger dexterity and fine manipulation, repetitive flexion and extension of the wrist, kneeling, crouching, crawling, pivoting, running, jumping, climbing, walking on uneven ground, prolonged weight-bearing, or working in extreme hot or cold environments. [AR 1049]. Dr. Sanders, the agreed medical examiner, issued a less restrictive permanent and stationary rating at about the same time. [AR 770-789].

The second ALJ attempted to diminish the significance of Dr. Sobol's April 2004 opinion by equating it with an RFC for "light work." [AR 24]. That equation fails. A preclusion against "prolonged weight-bearing" (that is, prolonged standing or walking) is not, as the second ALJ himself indicated elsewhere in his decision, consistent with the ability to perform the full range of light work, which requires standing or walking for six hours in an eight-hour day. [See AR 27 ("Because the claimant can no longer perform the prolonged standing/walking required by light exertional-level work, he cannot perform any of his past relevant work.")]. Furthermore, Dr. Sobol's April 2004 assessment includes restrictions on the use of the upper extremities that are incompatible with an RFC for the full range of light work, or even light work with a sit/stand option. See, e.g., SSR 85-15, 1985 WL 56857, at *7 (stating that "[s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do," and that "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work").

The second ALJ also faulted Dr. Sobol for relying, in part, on MRI scans from 2001 to support his 2004 permanent and stationary rating. An MRI scan of plaintiff's right foot in June 2001 showed soft tissue swelling and a split tear of a tendon distal to the lateral malleolus. [AR 125, 426]. A June 2001 left wrist MRI scan "showed an axonal injury to the ulnar sensory nerve, which was also present on a nerve conduction study." [AR 125; see AR 427-428 (June 2001 MRI report); (June 2001 upper left extremity nerve conduction study); see AR 472-476 (June 2002 upper left extremity nerve conduction study "consistent with the study" performed in June 2001 and showing]. A December 2001 MRI scan of the left

11

wrist "showed suspected small tears at the medial insertions of" certain ligaments "requiring clinical correlation." [AR 125 (citing AR 427)].

Dr. Sobol, Dr. Frey, and Dr. Sanders all indicated that those MRI scan studies were consistent with plaintiff's subjective history of left hand and right foot injuries for which plaintiff sought treatment beginning in 2001 and with his clinical presentation, and those MRI scans were used to assess plaintiff's injuries and formulate his treatment plan. [See, e.g., AR 368-369, 383, 799-800, 1046-1047]. It is abundantly clear from Dr. Sobol's permanent and stationary report that he relied on the 2001 MRI scans to establish and document the nature and extent of the injuries whose residual effects he described in that report, with citations to other subjective and objective evidence supporting his functional assessment. The second ALJ's suggestion that Dr. Sobol gave undue weight on the 2001 MRI scans is unfounded.

The second ALJ also referred to a May 15, 2002 examination by Dr. Sobol showing "no objective abnormality" of plaintiff's ankle. [AR 24 (citing AR 125, 396)]. This statement is identical to a statement made by the first ALJ in the February 2003 decision. [AR 125]. The findings on the May 15, 2002 examination report are not entirely legible, but there are objective findings noted with respect to plaintiff's "[right] ankle/foot" that appear to include a reference to tenderness and the peroneal nerve. Diagnoses included right ankle crush injury, and the treatment plan included a request for authorization for right ankle "lig reconstruct . . . per Dr. Frey." [AR 396]. The inference that this report shows no abnormalities in plaintiff's right ankle is not reasonable.

Absent any legitimate reasons to discredit Dr. Sobol's April 2004 opinion, the June 2004 permanent and stationary report prepared by Dr. Sanders does not amount to substantial evidence justifying rejection of Dr. Sobol's treating source opinion. In order for an examining physician's opinion to amount to substantial evidence, it must be based on "independent clinical findings," which "can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted). Dr. Sanders's diagnoses were "chronic residual status post injury, right ankle, with tendon involvement," and "chronic residual status post superficial nerve injury, left wrist, with trigger finger release, left thumb." [AR 776]. In summary, Dr. Sobol's diagnoses were status post debridement laceration wound closure and repair of the ulnar

12

sensory nerve; status post Z-plasty reconstruction, left hand; post-operative development of left trigger thumb; post left trigger thumb release; and right ankle and foot crush injury, status post surgical tendon repair. [AR 1047]. While Dr. Sobol's diagnoses are more detailed than those of Dr. Sanders, the two physicians' diagnoses are similar. This is not a case where there was any genuine dispute about plaintiff's diagnoses. Furthermore, there is no indication in his report that Dr. Sanders considered objective medical tests that Dr. Sobol did not consider. [See AR 770-780, 1042-1052].

For all of these reasons, the Appeals Council failed to provide specific, legitimate reasons based on substantial evidence for its rejection of Dr. Sobol's opinion.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). A district court

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The Appeals Council erred in rejecting Dr. Sobol's treating source opinion with respect to the period from February 2001 through March 2004, when Dr. Sobol opined that plaintiff was TTD. Dr. Sobol's disability opinion was well-supported and consistent with other substantial evidence of record. Crediting Dr. Sobol's erroneously rejected opinion requires a finding of disability as to that period.

13

The Appeals Council also erroneously rejected Dr. Sobol's opinion with respect to plaintiff's functional limitations, as expressed in his permanent and stationary report, for the period from April 1, 2004 through March 30, 2006. The Commissioner already has had three opportunities to adjudicate this case correctly. Two ALJs and the Appeals Council have not succeeded in doing so, and therefore a remand for further proceedings is unwarranted. Accordingly, plaintiff is entitled to a period of disability and disability benefits for the period from the alleged date of onset of January 4, 2001 through March 30, 2006.

## Conclusion

The Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, defendant's decision is reversed, and the matter is remanded for an award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

May 28, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge